SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | Arizona Supreme Court |
| | ) | No. CR-08-0286-PR |
| Appellee, | ) | |
| | ) | Court of Appeals |
| v. | ) | Division Two |
| | ) | No. 2 CA-CR 07-0117 |
| VINCENT ZARAGOZA, | ) | |
| | ) | Pima County |
| Appellant. | ) | Superior Court |
| | ) | No. CR20061822 |
| | ) | |
| | ) | |
| | ) | **O P I N I O N** |
| _____ | ) | |

Appeal from the Superior Court in Pima County
The Honorable Gus Aragón, Judge

**AFFIRMED**

_____

Opinion of the Court of Appeals Division Two
220 Ariz. 24, 202 P.3d 489 (App. 2008)

**VACATED**

_____


TERRY GODDARD, ARIZONA ATTORNEY GENERAL                  Phoenix
     By   Kent E. Cattani, Chief Counsel,
          Criminal Appeals/Capital Litigation
          Kathryn A. Damstra, Assistant Attorney General   Tucson
Attorneys for State of Arizona

Jack L. Lansdale, Jr.                                      Tucson

And

LAW OFFICES OF STEPHEN PAUL BARNARD, P.C.                  Tucson
     By   Stephen Paul Barnard

And

NESCI, ST. LOUIS, & WEST, P.L.L.C.                              Tucson
     By   Joseph P. St. Louis
Attorneys for Vincent Zaragoza

AARÓN CARREÓN-AÍNSA, PHOENIX CITY PROSECUTOR              Phoenix
     By   John Tutelman, Deputy City Prosecutor
Attorneys for Amicus Curiae Phoenix City Prosecutor's Office
_____

**R Y A N**, Justice

¶1      Arizona's driving under the influence statute, Ariz. Rev. Stat. ("A.R.S.") § 28-1381(A)(1) (Supp. 2005), makes it "unlawful for a person to drive or be in actual physical control of a vehicle . . . [w]hile under the influence of intoxicating liquor."  The statute does not define "actual physical control," and courts have crafted inconsistent jury instructions on the meaning of that phrase.  Although we conclude that the jury instruction in this case correctly guided the jury, at the request of both parties, we take this opportunity to set forth a recommended jury instruction for use in future cases.

**I**

¶2      In the early morning of April 29, 2006, a Tucson police officer responded to an emergency call at an apartment complex.  Outside the complex, the officer saw Defendant Vincent Zaragoza holding on to cars as he staggered through the parking lot toward his own vehicle.  Zaragoza entered his car, and the officer pulled up behind him.  When the officer shined his flashlight inside the car, he saw Zaragoza in the driver's seat

2

with one hand on the steering wheel as he inserted the key into the ignition with the other hand. Zaragoza had not yet started the car. The officer instructed Zaragoza to exit, and he complied, nearly falling as he did so. Zaragoza was extremely intoxicated, with a blood alcohol content later found to be .357. Upon further investigation, the police found that that his license had been revoked.

¶3     Zaragoza testified at trial that he intended to sleep in the car after having an argument with a woman inside the apartment complex and that he only planned to start the ignition to roll down the window and turn on the radio. He denied any intention of driving. The only issue at trial was whether Zaragoza exercised "actual physical control" of his vehicle. Over Zaragoza's objection, the court instructed the jury on actual physical control as follows:

> The defendant is in actual physical control of the vehicle if, based on the totality of the circumstances shown by the evidence, his *potential use* of the vehicle presented a real danger to himself or others at the time alleged.

(Emphasis added.) The court then listed several factors that the jury could consider when determining whether Zaragoza had controlled the vehicle.

¶4     The jury found Zaragoza guilty of aggravated driving under the influence of an intoxicant while having a suspended or revoked license and aggravated driving with a blood alcohol

3

concentration of 0.08 or more while his license was suspended or revoked. *See* A.R.S. §§ 28-1381, -1383. [1]

¶5 The court of appeals reversed, concluding that because the jury instruction defining "actual physical control" included the phrase "potential use," it misled the jury. *State v. Zaragoza,* 220 Ariz. 24, ___, ¶¶ 9-10, 202 P.3d 489, 492 (App. 2008). The court reasoned that

> [b]ecause the instruction could have been interpreted by the jurors as requiring them to find Zaragoza guilty based on control of his vehicle he *might* have hypothetically exercised but never *did*, that instruction was erroneous.

*Id.*

¶6 We granted the State's petition for review because this is a recurring issue of statewide importance. We have

---

[1] Section 28-1381(A) provides in relevant part:

It is unlawful for a person to drive or be in actual physical control of a vehicle in this state under any of the following circumstances:

1. While under the influence of intoxicating liquor, any drug, a vapor releasing substance containing a toxic substance or any combination of liquor, drugs or vapor releasing substances if the person is impaired to the slightest degree.

2. If the person has an alcohol concentration of 0.08 or more within two hours of driving or being in actual physical control of the vehicle and the alcohol concentration results from alcohol consumed either before or while driving or being in actual physical control of the vehicle.

Section 28-1383 aggravates the offense to a felony if the defendant's license has been revoked.

jurisdiction under Article 6, Section 5(3) of the Arizona Constitution, A.R.S. § 13-4032 (2001), and Arizona Rule of Criminal Procedure 31.19.

**II**

¶7     For many years the legislature limited Arizona's driving while intoxicated statute to actual driving. *See, e.g.*, Ariz. Code Ann. § 66-402 (1939); Ariz. Rev. Code § 1688 (1928); *see also State v. Ponce*, 59 Ariz. 158, 161, 124 P.2d 543, 544 (1942) (holding that for an intoxicated person, "[i]t is the *operation of the motor vehicle* which is forbidden"). In 1950, the legislature extended the statute to prohibit "actual physical control" of a vehicle while under the influence of intoxicating liquor. 1950 Ariz. Sess. Laws, ch. 3, § 54 (1st Spec. Sess.) (codified at Ariz. Code Ann. § 66-156 (Supp. 1951)).[2]   The legislature, however, did not define "actual physical control." *See id*.

¶8     This Court first addressed the actual physical control language several years later in *State v. Webb*, concluding that the legislature sought to include more than just driving because "the word drive was retained, and the words or be in actual

---

[2]   Section 66-156(a) provided in relevant part:

> It is unlawful and punishable . . . for any person who is under the influence of intoxicating liquor to drive or be in actual physical control of any vehicle within this state.

5

physical control were added in the *disjunctive*." 78 Ariz. 8, 10, 274 P.2d 338, 339 (1954) (internal quotation marks omitted). Webb, whose truck was in a traffic lane with its lights on and the motor running, was found "to be in a very intoxicated condition, 'passed out' or asleep with both hands and his head resting on the steering wheel." *Id*. at 9-10, 274 P.2d at 339. The Court held that the "legislature intended" the revised statute to "apply to persons having control of a vehicle while not actually driving it or having it in motion." *Id*. at 10, 247 P.2d at 339. The Court observed that "[a]n intoxicated person seated behind the steering wheel of a motor vehicle is a threat to the safety and welfare of the public." *Id*. at 11, 247 P.2d at 340.

¶9        This Court next addressed the issue of actual physical control in *State v. Zavala*, 136 Ariz. 356, 666 P.2d 456 (1983). There, the police found an extremely intoxicated defendant unconscious and "hanging partially from the window on the driver's side of the truck[,]" parked in the emergency lane of a freeway. *Id*. at 357, 666 P.2d at 457. The motor was not running and the key was "in the off position." *Id*. The Court distinguished *Webb* on two grounds: the truck was not in a traffic lane and the engine was not running. *Id*. at 358, 666 P.2d at 458. The Court found these circumstances indicated "that [the] defendant voluntarily ceased to exercise control

6

over the vehicle prior to losing consciousness." *Id*. at 359, 666 P.2d at 459. The defendant therefore could not be convicted of being in actual physical control. *Id*. The Court felt compelled to reach this interpretation of actual physical control because it believed that "it is reasonable to allow a driver, when he believes his driving is impaired, to pull completely off the highway, turn the key off and sleep until he is sober." *Id*.

¶10      Following *Zavala*, our courts of appeals held that unless an intoxicated person's vehicle was completely off the travelled part of the road, with the engine off, that person could be found to be in actual physical control of the vehicle. *See, e.g.*, *State ex rel. McDougall v. Superior Court* (*Schrader*), 173 Ariz. 582, 586, 845 P.2d 508, 512 (App. 1992) (finding actual physical control when defendant was asleep in a car in a parking lot with the engine running); *State v. Vermuele*, 160 Ariz. 295, 297, 772 P.2d 1148, 1150 (App. 1989) (reversing dismissal of prosecution when police found intoxicated driver illegally parked with the keys in the ignition but the engine off); *State v. Superior Court* (*Goseyun*), 153 Ariz. 119, 122, 735 P.2d 149, 152 (App. 1987) (finding actual physical control when vehicle was parked ten to twenty feet from the edge of the road, with the engine running and headlights on while the intoxicated defendant slept inside).

7

¶11     In *State v. Love*, this Court, however, abandoned the bright-line jurisprudence in favor of a "totality approach." 182 Ariz. 324, 327, 897 P.2d 626, 629 (1995).   This approach lent greater flexibility to the adjudication of actual physical control cases by providing a list of factors a fact finder could consider in deciding if a person actually controlled the vehicle.   *Id.*   In *Love*, the police found the defendant's vehicle parked in the emergency lane off an interstate with the engine running.   *Id*. at 325, 897 P.2d at 627.   The defendant was asleep, lying with his head near the passenger door and his legs under the steering wheel.   *Id*.   After being awakened, the defendant immediately reached for the gearshift, but the officer was able to convince him to move over and allow him to turn off the car.   *Id.*   Tests confirmed that he was intoxicated.   *Id*.

¶12     In deciding whether the defendant exercised actual physical control of the vehicle, this Court declined to apply the "rigid, mechanistic analysis" of *Zavala*, finding it preferable "to allow the trier of fact to consider the totality of the circumstances in determining whether defendant was in actual physical control of his vehicle."   *Id*. at 326, 897 P.2d at 628.   The Court listed several factors to be considered in determining whether a defendant exercised actual physical control, including

whether the vehicle was running or the ignition was on; where the key was located; where and in what position the driver was found in the vehicle; whether the person was awake or asleep; if the vehicle's headlights were on; where the vehicle was stopped (in the road or legally parked); whether the driver had voluntarily pulled off the road; time of day and weather conditions; if the heater or air conditioner was on; whether the windows were up or down; and any explanation of the circumstances advanced by the defense.

*Id.* (citing *Atkinson v. State*, 627 A.2d 1019, 1027 (Md. 1993)).

We further noted that this list is not exhaustive. *Id*. at 326-27, 897 P.2d at 628-29. The totality approach permits the fact finder to determine "whether a driver relinquished control and no longer presented a danger to himself or others." *Id*. at 327, 897 P.2d at 629.[3] In addition, the

totality approach permits drunk drivers to be prosecuted under a much greater variety of situations-for example, even when the vehicle is off the road with the engine not running. The drunk who turns off the key but remains behind the wheel is just as able to take command of the car and drive away, if so inclined, as the one who leaves the engine on. The former needs only an instant to start the vehicle, hardly a daunting task.

*Id.*

---

[3] Although *Love* held that under the totality test the defendant could have been convicted or acquitted, and therefore reversed the conviction, the Court observed that "if it [could] be shown that such person drove while intoxicated to reach the place where he or she was found, the evidence will support a judgment of guilt." 182 Ariz. at 327-28, 897 P.2d at 629-30 (citing *State ex rel. O'Neill v. Brown*, 182 Ariz. 525, 527, 898 P.2d 474, 476 (1995)(holding that driving while intoxicated could be proven by circumstantial evidence)).

¶13    As evidenced by this case, in the wake of *Love*, lower courts have struggled to craft a jury instruction that applies the totality approach to the varying factual situations that arise in these cases. *Compare State v. Dawley* (*Barraza*), 201 Ariz. 285, 288-89, ¶ 9, 34 P.3d 394, 397-98 (App. 2001) (defining actual physical control as "potential use of the vehicle [that] presented a real danger to himself or others"), *with Zaragoza*, 220 Ariz. at ___, ¶ 8, 202 P.3d at 491-92 (refusing to apply *Dawley* instruction); *see also State v. Rivera*, 207 Ariz. 69, 74, ¶ 16, 83 P.3d 69, 74 (App. 2004) (declining to apply *Dawley* instruction when intoxicated passenger grabbed steering wheel).

¶14    Accordingly, we first examine the jury instruction in this case and then recommend an instruction to be used prospectively.

### III

¶15    Although we review de novo whether a jury instruction correctly states the law, considered as a whole, jury instructions need only be "substantially free from error." *State v. Cox*, 217 Ariz. 353, 356, ¶ 15, 174 P.3d 265, 268 (2007) (internal quotation marks omitted). Jury instructions must be viewed in their entirety to determine whether they adequately reflect the law. *State v. Gallegos*, 178 Ariz. 1, 10, 870 P.2d 1097, 1106 (1994). A conviction will not be reversed based on

10

the instructions unless, taken as a whole, they misled the jurors. *Cox*, 217 Ariz. at 356, ¶ 15, 174 P.3d at 268.

¶16      Here, the trial court instructed the jury to consider whether, "based on the totality of the circumstances shown by the evidence, [defendant's] potential use of the vehicle presented a real danger to himself or others at the time alleged." The court then listed the factors set out in *Love*. The court of appeals concluded that the "potential use" language in the instruction rendered it erroneous because it would "broadly reach those impaired persons merely at risk to control a vehicle," observing that "many impaired adults have ready access to a vehicle, and therefore the potential use of one, but retain the sound judgment not to drive." *Zaragoza*, 220 Ariz. at ___, ¶ 8, 202 P.3d at 492.

¶17      But the instruction, taken as a whole, does not sweep as broadly as the court of appeals feared. Rather, the jury could only find Zaragoza in "actual physical control of the vehicle if, based on the totality of the circumstances shown by the evidence, his potential use of the vehicle *presented a real danger to himself or others at the time alleged*." (Emphasis added.) Thus, a conviction could not be premised on speculative potential use, but rather required proof that Zaragoza "presented a real danger to himself or others" when confronted by the officer. The instruction does not raise the specter that

11

any impaired person with access to a vehicle could be convicted for being in actual physical control of a vehicle. In addition, the instruction here closely tracks *Love*'s conclusion that a person is in actual physical control when, under the totality of the facts, the person "posed a threat to the public by the exercise of present or imminent control" over a vehicle "while impaired." 182 Ariz. at 326-27, 897 P.2d at 628-29.

¶18    Therefore, even if describing actual physical control as potential use of the vehicle could technically be construed as over-broad, the trial court's inclusion of the language "presented a real danger to himself or others at the time alleged," along with the list of the factors from *Love*, sufficiently narrowed the breadth of the instruction here. The instruction, read in its entirety, could not have led a reasonable jury to find Zaragoza guilty "based on control of his vehicle he *might* have hypothetically exercised but never *did*." *Zaragoza*, 220 Ariz. at ___, ¶ 10, 202 P.3d at 492.

**IV**

¶19    Despite arguing that the instruction here was not erroneous, the State asks this Court to recommend an instruction to avoid the confusion surrounding the meaning of "actual physical control." Zaragoza makes a similar request. Both

12

offer variations of the Revised Arizona Jury Instruction ("RAJI") (Standard Criminal) 28.1381(A)(1)(DUI) (3d ed. 2008).[4]

¶20     The court of appeals here also attempted to give guidance to trial courts on an appropriate instruction. It, however, suggested language that could create unnecessary ambiguity, stating that

> [a]t least under the facts presented here, any instruction defining the scope of the crime must focus on the totality of the circumstances and what they demonstrate about the *defendant's purpose* in exercising control of the vehicle. More specifically, we believe the legislature intended to criminalize an impaired person's control of a vehicle when the circumstances of such control – as actually physically exercised – demonstrate an *ultimate purpose* of placing the vehicle in motion or directing an influence over a vehicle in motion.

---

[4] RAJI 28.1381(A)(1) provides:

> In determining the defendant was in actual physical control of the vehicle, you should consider the totality of circumstances shown by the evidence and whether the defendant's current or imminent control of the vehicle presented a real danger to [himself] [herself] or others at the time alleged. [Factors to be considered might include, but are not limited to
>
> {listing the factors from *Love*, 182 Ariz. at 326, 897 P.2d at 628.}
>
> This list is not meant to be all-inclusive.] It is up to you to examine all the available evidence in its totality and weigh its credibility in determining whether the defendant was simply using the vehicle as a stationery shelter or actually posed a threat to the public by the exercise of present or imminent control over it while impaired.

13

*Zaragoza*, 220 Ariz. at ___, ¶ 14, 202 P.3d at 493 (emphases added). The defendant's intent is not an element of the strict liability offense of driving while intoxicated. *See* A.R.S. § 13-202(B) (2001);[5] A.R.S. §§ 28-1381, -1382; *see also State ex rel. Romley v. Superior Court* (*Cunningham*), 184 Ariz. 409, 411, 909 P.2d 476, 478 (App. 1995); *State v. Parker*, 136 Ariz. 474, 475, 666 P.2d 1083, 1084 (App. 1983). The facts determine whether a defendant exercises physical control of a vehicle. Therefore, any instruction on actual physical control that requires a jury to consider a defendant's purpose in exercising control of a vehicle incorrectly states the law.

¶21 Instead, we believe that the following modified form of the RAJI should be used in future actual physical control prosecutions. That instruction reads as follows:

> In determining whether the defendant was in actual physical control of the vehicle, you should consider the totality of the circumstances shown by the evidence and whether the defendant's current or imminent control of the vehicle presented a real danger to [himself] [herself] or others at the time alleged. Factors to be considered might include, but are not limited to:

---

[5] Section 13-202(B) provides in relevant part:

If a statute defining an offense does not expressly prescribe a culpable mental state that is sufficient for commission of the offense, no culpable mental state is required for the commission of such offense, and the offense is one of strict liability unless the proscribed conduct necessarily involves a culpable mental state.

14

1. Whether the vehicle was running;
2. Whether the ignition was on;
3. Where the ignition key was located;
4. Where and in what position the driver was found in the vehicle;
5. Whether the person was awake or asleep;
6. Whether the vehicle's headlights were on;
7. Where the vehicle was stopped;
8. Whether the driver had voluntarily pulled off the road;
9. Time of day;
10. Weather conditions;
11. Whether the heater or air conditioner was on;
12. Whether the windows were up or down;
13. Any explanation of the circumstances shown by the evidence.

This list is not meant to be all-inclusive. It is up to you to examine all the available evidence and weigh its credibility in determining whether the defendant actually posed a threat to the public by the exercise of present or imminent control of the vehicle while impaired.

This instruction captures *Love*'s holding that "actual physical control is a question for the fact finder and should be based upon consideration of all the circumstances." 182 Ariz. at 328, 897 P.2d at 630. It requires a fact finder, in determining if a person actually physically controlled a vehicle in violation of the statute, not only to consider all the circumstances, but also to decide if a defendant "actually posed a threat to the public by the exercise of present or imminent control over [the vehicle] while impaired." *Id*. at 326-27, 897 P.2d at 628-29.

15

**V**

¶**22**      For the foregoing reasons we vacate the court of appeals opinion and affirm the judgment of the trial court.


_____
Michael D. Ryan, Justice

CONCURRING:


_____
Ruth V. McGregor, Chief Justice


_____
Rebecca White Berch, Vice Chief Justice


_____
Andrew D. Hurwitz, Justice


_____
W. Scott Bales, Justice