NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

JOSHUA CLARENCE HARRIS, *Appellant*.

No. 1 CA-CR 14-0428
FILED 7-23-2015

---

Appeal from the Superior Court in Maricopa County
No. CR2012-105391-002
The Honorable Jerry Bernstein, Commissioner

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Andrew Reilly
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Margaret M. Green
*Counsel for Appellant*

## MEMORANDUM DECISION

Presiding Judge Patricia K. Norris delivered the decision of the Court, in which Judge Patricia A. Orozco and Judge Maurice Portley joined.

N O R R I S, Judge:

¶1        Joshua Clarence Harris appeals from his convictions and sentences for two counts of aggravated driving under the influence. On appeal he argues, first, the State failed to present sufficient evidence supporting his convictions; second, the superior court committed structural error during voir dire by allowing the prosecutor to instruct the jury panel on the law; third, the prosecutor committed prosecutorial misconduct during opening statement and closing argument; and fourth, the court improperly instructed the jury on "actual physical control." We disagree with Harris's arguments and affirm his convictions and sentences.

## FACTS AND PROCEDURAL BACKGROUND[1]

¶2        Police officer H. was on patrol at approximately 9:00 p.m. on January 24, 2012 when he stopped to investigate a car parked on the shoulder. Officer H. noticed that the car's front right tire was "shredded" and saw Harris, the car's only occupant, "passed out" in the driver's seat with a key in the ignition.

¶3        After Officer H. woke him, Harris explained he was trying to get home and asked whether he had "hit anything." Harris also exhibited numerous signs of alcohol impairment, including red, watery eyes, slurred speech, and a strong odor of alcohol. Harris told the officer his driver's license had been suspended. Officer H. arrested Harris for suspected DUI and transported him to the police station where his blood was drawn at 10:08 p.m. A Department of Public Safety criminalist tested Harris's blood and determined it had a .251 blood alcohol concentration ("BAC").

¶4        A grand jury indicted Harris on two counts of aggravated DUI. At trial, the State argued Harris was driving the car—or, alternatively, exercising actual physical control of the car—while impaired and with a

---

[1]We view the facts in the light most favorable to sustaining the jury's verdict and resolve all reasonable inferences against Harris. *See State v. Guerra*, 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989).

BAC greater than .08.  Harris and his sister, D., testified D. was driving Harris home, and after a tire "blew out" and the car stalled, she walked home leaving Harris in the car sitting in the passenger seat.  The jury found Harris guilty as charged.

## DISCUSSION

I.      Sufficiency of the Evidence

**¶5**          Harris first argues the State failed to present sufficient evidence proving beyond a reasonable doubt he had exercised actual physical control of the car.   Specifically, he contends the State failed to present sufficient evidence he posed a threat to the public by exercising present or imminent control of the car while impaired.  We disagree.

**¶6**          Our review of the sufficiency of the evidence is limited to whether substantial evidence exists to support the guilty verdict.  *See State v. West*, 226 Ariz. 559, 562, ¶ 14, 250 P.3d 1188, 1191 (2011); *see also* Ariz. R. Crim. P. 20(a) (directing courts to enter judgment of acquittal "if there is no substantial evidence to warrant a conviction").  Substantial evidence is such proof that "reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *West*, 226 Ariz. at 562, ¶ 16, 250 P.3d at 1191 (citations omitted) (internal quotation marks omitted).

**¶7**          The State was required to prove beyond a reasonable doubt that Harris, while his license was suspended, either drove or exercised actual physical control of the car while either impaired to the slightest degree or with a BAC of .08 or more within two hours of driving or being in actual physical control of the car.  *See* Ariz. Rev. Stat. ("A.R.S.") section 28-1383(A)(1) (Supp. 2014).[2]  "Actual physical control" is not defined by statute.  Our supreme court, however, has instructed that the finder of fact should consider the totality of the circumstances in "determining whether the defendant's current or imminent control of the vehicle presented a real danger to [himself] [herself] or others at the time alleged." *State v. Zaragoza*, 221 Ariz. 49, 52, 54, ¶¶ 12, 21, 209 P.3d 629, 632, 634 (2009).  In making such a determination, the *Zaragoza* court delineated a non-exclusive list of

---

[2]Although the Arizona Legislature amended A.R.S. § 28-1383 after the date of Harris's offenses, the amendments are immaterial to the resolution of this appeal.  Thus, we cite to the current version.

factors, including the location of the ignition key, the position of the driver in the vehicle, and the vehicle's location. *Id.* at 54, ¶ 21, 209 P.3d at 634.

¶8         Here, the State presented substantial evidence supporting several of the factors identified by the supreme court in *Zaragoza.* For example, the car was parked on the shoulder of an urban freeway, thereby posing a danger to Harris and passing motorists. Further, Harris was in the driver seat with the key in the ignition, was within reach of the steering wheel and gas pedal, and was the car's sole occupant. Harris's BAC was over three times the legal limit, and he showed obvious signs of severe impairment.

¶9         Under these circumstances, a reasonable jury could conclude Harris was in actual physical control of the car and presented a real danger to himself and others on the roadway. And contrary to Harris's argument on appeal, even if the car was inoperable, that did not, as a matter of law, preclude a finding that he had exercised actual physical control over it. *See State v. Dawley*, 201 Ariz. 285, 288, ¶ 9, 34 P.3d 394, 397 (App. 2001) (jury should not be instructed that "actual physical control means that a person has the apparent ability to start and move a vehicle") (internal quotation marks omitted); *State v. Larriva*, 178 Ariz. 64, 65, 870 P.2d 1160, 1161 (App. 1993) (concluding vehicle's operability "is only tangentially relevant to the determination of actual physical control"); *State v. Vermuele*, 160 Ariz. 295, 297, 772 P.2d 1148, 1150 (App. 1989) (intoxicated defendant was in actual physical control of his parked car when he entered it and turned ignition to on position even though engine never started).

¶10         Further, the trial evidence supports a finding that Harris, while intoxicated, had driven the car before pulling over to the shoulder and falling asleep. This evidence includes Harris's statement to Officer H. he was trying to get home and his question to Officer H. asking whether he had "hit anything." Additionally, Officer H. testified Harris neither denied driving nor asserted D. had driven the car. Thus, even if the car was inoperable by the time Officer H. arrived on the scene and found Harris, substantial evidence still supports his convictions.[3] *See State v. Love*, 182 Ariz. 324, 327–28, 897 P.2d 626, 629–30 (1995) ("[E]ven where a defendant is determined to have relinquished actual physical control, if it can be shown

---

[3]That is, because the DUI statutes provide in the disjunctive that an intoxicated person may be guilty by driving *or* exercising actual physical control of a vehicle, the evidence of Harris driving the vehicle while intoxicated also supports his convictions. *See* A.R.S. § 28-1381(A)(1), (2) (2012).

that such person drove while intoxicated to reach the place where he or she was found, the evidence will support a judgment of guilt.").

II.      Voir Dire

¶11      During voir dire, and without objection, the prosecutor discussed the concept of actual physical control and told the jury panel the following:

> [T]he State either has to prove the defendant was driving or was in actual physical control. And I want to read to you a little portion of the law with regard to that issue.
>
> A person who drives a vehicle actually controls it. Driving is a subset of actual physical control. The actual physical control portion of the statute is broader than the driving portion. The legislature intended to extend the driving under the influence statutes to encompass those situations in which a person who is not driving nonetheless poses an equivalent risk. The purpose of the actual physical control provision is to enable the person to be apprehended before he strikes.

The prosecutor continued by asking if the panel understood what she had explained and whether anyone disagreed with actual physical control being a basis for DUI culpability. None of the potential jurors indicated any disagreement with what the prosecutor had said.

¶12      Relying on *State v. Anderson*, 197 Ariz. 314, 323, 4 P.3d 369, 378 (2000), Harris contends the prosecutor's statements improperly conditioned the jury and amounted to structural error.[4]  *See State v. McMurtrey*, 136 Ariz. 93, 99, 664 P.2d 637, 643 (1983) ("It is not a legitimate function of voir dire to condition the jury to the receipt of certain evidence or to a particular view of the evidence.").  When structural error occurs in a criminal trial which results in a guilty verdict, this court automatically reverses without considering whether the error prejudiced the defendant. *State v. Ring*, 204 Ariz. 534, 552, ¶ 45, 65 P.3d 915, 933 (2003).

---

[4]Harris also argues the prosecutor's statements misstated the law.  We address that issue *infra* at paragraph 18.

**¶13** *Anderson*, however, is not controlling. In that capital murder case, our supreme court held the superior court had committed structural error during voir dire by not permitting the defendant an opportunity to question and possibly rehabilitate potential jurors who had stated they were opposed to the death penalty. *Anderson*, 197 Ariz. at 318, 324, ¶¶ 5, 23, 4 P.3d at 373, 379. Here, in contrast, Harris had the opportunity to question the prospective jurors and in fact did so. Accordingly, we will not review the prosecutor's statements for structural error.

**¶14** Instead, because Harris did not object to the prosecutor's statements during voir dire, we review for fundamental error. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005). To obtain relief under fundamental error review, Harris has the burden to show error occurred, the error was fundamental, and he was prejudiced thereby. *See Henderson*, 210 Ariz. at 567–68, ¶¶ 20–22, 115 P.3d at 607–08. Fundamental error is error that "goes to the foundation of his case, takes away a right that is essential to his defense, and is of such magnitude that he could not have received a fair trial." *Id.* at 568, ¶ 24, 115 P.3d at 608.

**¶15** As we explain below, the prosecutor's statements during voir dire accurately reflected Arizona law. The statements also did not condition the jury to view the trial evidence in a manner favored by the State. Instead, the prosecutor's statements and following question, see *supra* ¶ 11, allowed the State "to intelligently exercise [its] peremptory challenges and challenges for cause." *McMurtrey*, 136 Ariz. at 99, 664 P.2d at 643. Thus, Harris has not demonstrated error, let alone fundamental error. Moreover, Harris has not demonstrated how the purported error prejudiced him.[5]

III.    Prosecutorial Misconduct

**¶16** Similar to her comments during voir dire, during opening statement and closing argument the prosecutor stated, "The purpose of actual physical control is for the person to be apprehended before he strikes." The prosecutor also stated in closing that whether the car was operable was not a factor for the jury to consider in determining whether Harris was in actual physical control. Harris argues the prosecutor's statements misstated the law and her "misconduct" requires us to reverse

---

[5]As noted, Harris's convictions could be based on the jury's finding that he drove the car while intoxicated before stopping on the freeway. Thus, any error in discussing actual physical control was immaterial to the verdicts.

his convictions. Reviewing for fundamental error because Harris failed to object to these statements, we disagree.

¶17     Prosecutorial misconduct is not merely "legal error, negligence, mistake, or insignificant impropriety, but, taken as a whole, amounts to intentional conduct which the prosecutor knows to be improper and prejudicial." *Pool v. Superior Court*, 139 Ariz. 98, 108, 677 P.2d 261, 271 (1984). To justify reversal, the misconduct "must be so pronounced and persistent that it permeates the entire atmosphere of the trial." *State v. Lee*, 189 Ariz. 608, 616, 944 P.2d 1222, 1230 (1997) (citations omitted) (internal quotation marks omitted). Even then, reversal is not required unless the defendant was denied a fair trial. *State v. Bible*, 175 Ariz. 549, 600, 858 P.2d 1152, 1203 (1993).

¶18     The prosecutor's statements about the purpose of the actual physical control element in a DUI prosecution accurately reflects Arizona law. *See State v. Webb*, 78 Ariz. 8, 11, 274 P.2d 338, 339–40 (1954) ("actual physical control" provision is to "enable the drunken driver to be apprehended before he strikes"); *State v. Rivera*, 207 Ariz. 69, 72, ¶ 9, 83 P.3d 69, 72 (App. 2004) (citing with approval *Webb's* "before he strikes" language); *Dawley*, 201 Ariz. at 288, ¶ 9, 34 P.3d at 397 ("[T]he purpose of the statute's 'actual physical control' provision . . . is to 'enable the drunken driver to be apprehended before he strikes.'") *quoting Webb,* 78 Ariz. at 11, 274 P.2d at 339.

¶19     The prosecutor's statement that whether the car was operable was not a "factor" for the jury to consider for determining actual physical control was, however, a misstatement of the law because the jury is to consider "any explanation of the circumstances shown by the evidence." *Zaragoza*, 221 Ariz. at 54, ¶ 21, 209 P.3d at 634. Nevertheless, when read in context, it is clear the prosecutor was referring to the elements of the offenses, none of which require the State to prove the vehicle was operable at the time of the offense. *See* A.R.S. § 28-1383(A)(1).

¶20     The prosecutor stated:

> The defense is making a big point of telling you about how his sister believes the car died, even though she admitted she doesn't know much about cars and about how, you know, whether the vehicle could have actually moved or been driven on the roadway. You will see nowhere in any of these instructions any requirement that the State prove the car was operable, could have

> moved, that is not in the instructions anywhere. That's not one of the factors, that is not in the definition of actual physical control, that is nowhere in these instructions. The State is not required to prove that that vehicle could have moved anywhere. That's simply not part of the law.

From the foregoing, it appears the prosecutor mistakenly used the word "factor" instead of the word "element." Such a mistake does not amount to misconduct.

¶21 In any event, the jury was properly instructed to consider "any explanation of the circumstances shown by the evidence," and to not consider the lawyers' arguments as evidence. As Harris concedes, "A misstatement of the law can be cured by the court's instruction that the attorney's argument is not evidence in a case." *See State v. Anderson*, 210 Ariz. 327, 342, ¶ 50, 111 P.3d 369, 384 (2005). Thus, to the extent the prosecutor's statement regarding operability amounted to intentional error, the court's instructions to the jury cured any resulting prejudice. *See State v. Newell,* 212 Ariz. 389, 403, ¶ 68, 132 P.3d 833, 847 (2006) (superior court properly instructed jury that lawyers' statements during closing arguments are not evidence; appellate court presumes jurors follow court's instructions).

IV.    Jury Instruction

¶22 The superior court instructed the jury as follows:

> In determining whether the Defendant was in "actual physical control" of the vehicle, you should consider the totality of circumstances shown by the evidence and whether the Defendant's current or imminent control of the vehicle presented a real danger to himself or others at the time alleged. Factors to be considered in any given case might include, but are not limited to:
>
> (1) Whether the vehicle was running;
>
> (2) Whether the ignition was on;
>
> (3) Where the ignition key was located;

(4) Where in and what position the driver was found in the vehicle;

(5) Whether the person was awake or asleep;

(6) Whether the vehicle's headlights were on;

(7) Where the vehicle was stopped;

(8) Whether the driver had voluntarily pulled off the road;

(9) Time of day;

(10) Weather conditions;

(11) Whether the heater or air conditioner was on;

(12) Whether the windows were up or down;

(13) Any explanation of the circumstances shown by the evidence.

This list is not meant to be all-inclusive. It is up to you to examine all the available evidence and weigh its credibility in determining whether the Defendant actually posed a threat to the public by the exercise of present or imminent control of the vehicle while impaired.

¶23 Harris argues the two references to "driver" in this instruction amounted to improper comment on the evidence and constituted fundamental error because the jury could interpret the instruction as an opinion by the court that Harris was the driver. Harris also contends, without elaboration, that "[t]he instruction also relieved the state of its burden of proving actual physical control . . . ."

¶24 We do not need to address the merits of Harris's arguments. The instruction given by the court was a verbatim recitation of the jury instruction our supreme court approved in actual physical control DUI prosecutions. *See Zaragoza*, 221 Ariz. at 54, ¶ 21, 209 P.3d at 634; *State v. Paredes-Solano*, 223 Ariz. 284, 292, ¶ 23, 222 P.3d 900, 908 (App. 2009) (declining to consider challenge to superior court's reasonable doubt instruction because the instruction was approved by the supreme court).

## CONCLUSION

¶25 For the foregoing reasons, we affirm Harris's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: ama